# IN THE COURT OF APPEALS OF IOWA

No. 19-1418
Filed November 6, 2019

**IN THE INTEREST OF A.D.,**
**Minor Child,**

**A.W., Mother,**
        Appellant,

**R.D., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

Both parents appeal the juvenile court order terminating their parental rights.  **AFFIRMED ON BOTH APPEALS.**

Jane M. White of Jane M. White Law Office, Des Moines, for appellant mother.

Jeremy Feitelson of Feitelson Law, L.L.C., West Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Magdalena Reese of Juvenile Public Defender Office, Des Moines, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

Both parents appeal the juvenile court order terminating their parental rights. We find it would not be in the child's best interests to grant the parents an extension of time to work on reunification, there is clear and convincing evidence in the record to support termination of their parental rights, termination is in the child's best interests, and none of the exceptions to termination should be applied. The child has extensive medical needs that the parents are not able to meet.

## I.     Background Facts & Proceedings

A.W., mother, and R.D., father, are the parents of A.D., born in 2018. The father's parental rights to another child were terminated in December 2017. The record alludes to the termination of A.W.'s parental rights regarding two other children in approximately 2013. As the State did not file documentation of the mother's previous termination, the juvenile court did not consider the previous terminations and declined to terminate pursuant to Iowa Code section 232.116(1)(g) (2019) for either parent. The juvenile court also declined to terminate under section 232.116(1)(e).[1] The juvenile court terminated both parents' rights under section 232.116(1)(h).

A.D., who was approximately ten months old at the time of the termination hearing, was born with Pierre Robin Sequence, a genetic disorder that results in a small lower jaw, a tongue that is further back than normal, and blockage of the airways. She has a cleft hard and soft palate and is fed primarily through a feeding

---

[1] The State offered exhibits in both the underlying child-in-need-of-assistance proceeding and termination file. However, none of the exhibits contain any identifying marks, information, or numbers. It is essential for our review that the exhibits be numbered.

tube.  A.D. cannot be exposed to second-hand smoke or be touched, held, kissed, or in contact with people who are exposed to smoke of any kind.  A.D. spent thirty-two days in intensive care after birth.  During this time, the parents did not learn how to care for the child's special needs resulting in the child not being placed in the  parents' custody on release from the hospital.  On November 16, 2018, the juvenile court placed A.D. in foster care following discharge from the hospital.

The juvenile court adjudicated the child to be in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2), (e), and (n) (2018).  The court stated:

> All parties acknowledge the needs of this medically fragile child to continue to get highly skilled medical care and to be carefully and closely monitored for her medical needs.  It was emphasized that this is a case where the parents are going to need to demonstrate parenting skills and the abilities to meet the specific needs of this particular child in order for our permanency goal of reunification to be possible.

Regarding the parents' failure to learn to provide the specialized care A.D. requires, a social worker noted that when offered the opportunity to feed her or do something for her, the parents have declined and allowed the foster mother to do it instead.  It was further reported that neither parent has demonstrated that they are interested in putting forth the effort required to meet their child's needs even during a short visit or doctor appointment.

The parents were informed of all of the child's medical appointments but only attended eleven out of thirty-nine appointments.  Due to the child's respiratory problems, the child cannot be exposed to smoke or second-hand smoke.  Despite this, the parents often arrived at visitation smelling of cigarette smoke.  The foster mother reported the mother smelling of smoke as recently as one week prior to the

termination hearing. A.W. reported that R.D. continued to smoke within two months of the termination hearing.

On May 17, 2019, the State filed a petition seeking to terminate the parents' rights. The termination hearing was held on August 5. Neither parent testified at the termination hearing. Through professional statements of counsel, the parents represented that they had moved to a new apartment a few days earlier, the mother had a mental-health evaluation and had scheduled some appointments for individual therapy, the father had re-engaged in counseling, and they had stopped smoking. Both parents asked for a six-month extension to work on reunification. The guardian ad litem recommended termination because the parents lacked the capacity to care for the child's needs.

The juvenile court terminated the parents' rights under section 232.116(1)(h) (2019). The court stated,

> The parents did not request return of their child at the August 5, 2019 hearing but rather asked for more time to ready themselves and prepare themselves to be able to meet [the child's] medical needs in their home and in their care, emphasizing that they now had just gained housing.

The court found termination was in the child's best interests, noting the parents had not learned how to attend to her special medical needs. The court also found none of the exceptions in section 232.116(3) should be applied. The court denied the request for an extension of time, finding, "[N]or does it appear to the undersigned that with more time or different supports or attention that [the parents] will be able to [meet the child's needs] at any time soon." Both parents appeal the juvenile court's decision.

## II. Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "'Clear and convincing evidence means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (citation omitted). Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III. Extension of Time

At the termination hearing, the parents did not ask to have the child returned to their care at that time but instead requested a six-month extension of time to work on reunification. In support of their request, they pointed out they just obtained new housing several days before the termination hearing and they had quit smoking.

Under section 232.117(5), the juvenile court may order an extension of time under section 232.104 as an alternative to terminating parental rights. A six-month extension may be granted based on a "determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

At the time of the termination hearing, the child had been out of the parents' custody for more than eight months and the parents remained unable to meet her special medical needs. Neither parent understands the significance of their daughter's medical needs. Visitation with the parents never progressed beyond fully-supervised visitation. The parents have yet to take the opportunities presented to them to learn how to address A.D.'s highly specialized medical care.

Despite being invited to all medical appointments, neither parent has demonstrated they can perform A.D.'s medical care in or out of the hospital. Neither parent has learned how to tube feed A.D. without feeding too fast, nor have they learned how to bottle feed. For the bulk of the case, there were ongoing concerns regarding the parents smelling like smoke. The parents have been minimally involved in therapy and have missed the majority of A.D.'s medical appointments. Although a department of human services report states that A.D. "chokes silently," during a visit one month prior to the termination hearing, A.D. began to turn red and struggled to breath. Neither parent responded, and the foster mother was required to intervene with a breathing treatment. During this same month, R.D. appeared to be confused over A.D.'s medical needs and used the phrase "What the hell?" several times to the foster mother about A.D.'s medical needs.

We agree with the juvenile court's evaluation that it did not appear "that with more time or different supports or attention that [the parents] will be able to [meet the child's needs] at any time soon."

Given the lack of progress by the parents, we cannot determine the need for removal will no longer exist after an additional six months. As indicated, the parents obtained housing only days before the termination hearing as a result of a voucher for the deposit and the first month's rent. However, at the time of the termination hearing, neither parent was employed or had any source of income. They have made minimal progress in treatment. Most importantly, they have yet to exhibit a full understanding of A.D.'s medical needs or any ability to address those medical needs. *See In re D.R*., No. 15-1968, 2016 WL 1129385, at *4 (Iowa Ct. App. Mar. 23, 2016) (affirming termination where "mother's late progress in the

case did not begin until after the State filed its petition seeking termination of parental rights"); *In re A.D.*, No. 15-1508, 2016 WL 902953, at *2 (Iowa Ct. App. Mar. 9, 2016) ("Iowa courts look skeptically at 'last-minute' attempts to address longstanding issues, finding them inadequate to preclude termination of parental rights."); *In re I.V.*, No. 15-0608, 2015 WL 4486237, at *2–3 (Iowa Ct. App. July 22, 2015) (holding "last-minute" use of services for litigation purposes was insufficient to demonstrate the child could be returned to the mother's care); *see also In re A.E.*, No. 16-0510, 2016 WL 3271887, at *3 (Iowa Ct. App. June 15, 2016).

### IV. Sufficiency of the Evidence

The parents claim there is not sufficient evidence in the record to support termination of their parental rights. Section 232.116(1)(h) provides for the termination of parental rights upon a finding:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The child was born in 2018 and is less than three years old. There was a CINA adjudication pursuant to section 232.2(6)(c)(2), (e), and (n) (2018). The child had been removed from the parents' custody for more than six months. There was never a trial home visit. Additionally, the child could not be returned to the parents' custody at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (stating section 232.116(1)(h)(4) refers to whether the child could

be safely returned to the parents' care at the time of the termination hearing). At the termination hearing, the parents did not have the ability to care for the child. We conclude the juvenile court properly terminated the parents' rights under section 232.116(1)(h) (2019).

## V. Best Interests

The parents assert termination of their parental rights is not in the child's best interests. In considering the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

The juvenile court found the termination of the parents' rights in this case was "sad," because the parents loved the child and wanted to parent her, but the court found, "they really just are not able to meet her medical needs and rise to the level of minimally adequate parenting for this particular child." We agree with the juvenile court's conclusions. We also note the parents stated they wanted to care for the child but their actions—failing to attend most of the child's medical appointments or to learn how to take care of her—show they are not able to meet the child's needs. We determine termination of the parents' rights is in the child's best interests.

### VI.     Exceptions

The parents contend the court should have applied an exception to termination.  *See* Iowa Code § 232.116(3).  In particular, they rely on section 232.116(3)(c), which provides the court may decide to not terminate a parent's rights if the court finds, "There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

The factors in section 232.116(3) are permissive, not mandatory.  *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011).  In deciding whether to apply an exception to termination, we consider "the unique circumstances of each case and the best interests of the child."  *A.M.*, 843 N.W.2d at 113 (citation omitted).  The juvenile court found the evidence did not support the application of section 232.116(3)(c).  The evidence does not show termination of the parents' rights would be detrimental to the child.  The child has been living in foster care since she was removed from the parents' custody in November 2018, her entire life with the exception of her stay at the hospital following her birth.  We find none of the exceptions to termination found in section 232.116(3) should be applied in this case.

We affirm the decision of the juvenile court.

**AFFIRMED ON BOTH APPEALS.**